UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JONATHAN NEIL & ASSOCIATES, INC., | |
| Plaintiff, | CASE NO. C06-1455JLR |
| v. | ORDER |
| JNA SEATTLE, INC., et al., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the court on a motion for a preliminary injunction from Plaintiff Jonathan Neil & Associates, Inc. (Dkt. # 11). The court has considered the parties' briefing, the evidence submitted in support thereof, and the arguments of counsel. As explained below in the court's findings of fact and conclusions of law, the court GRANTS Plaintiff's motion for a preliminary injunction.

## II. FINDINGS OF FACT

1. This case arises from a trademark dispute over the use of the terms, "Jonathan Neil & Associates" and "JNA."

ORDER – 1

2. Plaintiff Jonathan Neil & Associates, Inc. is a California corporation doing business as a commercial collection agency. Plaintiff represents creditors throughout the United States, including Washington State.

3. Plaintiff has continuously operated under the name "Jonathan Neil & Associates" and utilized a logo comprised of the letters "JNA" since its inception in 1981. The "JNA" logo appears in Plaintiff's advertisements, letterhead, business cards, its website, and staff email addresses. Grubman Decl. ¶¶ 2-3, Exs. G-I; Student Decl. ¶ 2. Plaintiff markets its collection services under the names "JNA" and "Jonathan Neil & Associates" at trade shows and trade conventions. Grubman Decl. ¶¶ 4-6.

4. Defendant JNA Seattle, Inc. is a Washington corporation of more recent vintage engaged in commercial collection services; it was incorporated by Defendant Jerry Priest in 2004.

5. Defendants currently operate under the names "JNA Seattle," "Jonathon Neil & Associates," and "JNA." Defendants have solicited collection accounts using both "JNA Seattle" and "Jonathon Neil & Associates" letterhead. Olins Decl., Exs. B, D-F; Priest Decl. ¶¶ 29-33, Ex. L. Defendants' business is listed in the 2007 Seattle yellow pages as "Jonathon Neil & Associates" under "Collection Agencies." Naomi See Decl., Ex. L. In February 2007, the sign on Defendants' office door read "Jonathan Neil & Associates." Wonderly Decl., Ex. K.

6. Plaintiff presents evidence to show that businesses and attorneys engaged commercial collection have confused Plaintiff's and Defendants' businesses. Glassberg Decl. ¶ 4; Elggren Decl. ¶ 3; Olins Decl. ¶¶ 3-5, Exs. A, B, C, D; Grubman Decl. ¶¶ 5-7, Ex. J. Plaintiff has received requests from companies asking for status reports relating accounts that apparently belong to Defendants. Grubman Decl. ¶¶ 5-7.

ORDER – 2

7. At one time, Mr. Priest and Plaintiff were engaged in a business relationship. In 2002, Plaintiff hired Mr. Priest as a salesperson, specializing in attracting the business of insurance companies seeking to collect on subrogation claims. Plaintiff opened an office in Seattle, Washington, located at 1833 North 105th, Suite 101, where Mr. Priest worked. Student Decl. ¶ 4. Under this arrangement, Mr. Priest received a salary and bonuses from Plaintiff. Priest Decl. ¶ 3.

8. In April 2003, because Mr. Priest failed to meet Plaintiff's expectations in attracting subrogation clients, Plaintiff changed their arrangement to provide that Mr. Priest would be paid by commission only. Under the commission only package, Mr. Priest assumed responsibility for all expenses and overhead related to the Seattle office. Student Decl. ¶¶ 4,5

9. In early 2004, further negotiations took place concerning the parties' working relationship. The parties offer conflicting accounts of the substance and effect of those negotiations.

10. Mr. Priest claims that in January 2004, while the parties agreed to "part company," they decided that Mr. Priest should form a Washington corporation to take responsibility of the subrogation practice that was associated with the Seattle office. Priest Decl. ¶ 5. Mr. Priest testified that the parties specifically agreed that he would use the name "JNA Seattle, Inc." for his new clients and "Jonathan Neil & Associates" for Plaintiff's existing clients. Id. Under Mr. Priest's understanding, "JNA Seattle would essentially be Jonathan Neil [& Associates] Inc.'s 'Seattle Office.'" Id.

11. There is no evidence to corroborate Mr. Priest's contention that he had Plaintiff's explicit permission to use the name "JNA Seattle" in connection with his own independent operations.

ORDER – 3

12. On February 6, 2004, Mr. Priest incorporated his business in Washington state under the name "JNA Seattle, Inc." Naomi See Decl., Ex. M.

13. According to Plaintiff, it never knew, much less approved of JNA Seattle, Inc.'s incorporation. See Reply Student Decl. ¶ 4; Reply Grubman ¶ 2. Plaintiff disputes Mr. Priest's contention that the parties agreed to continue their business relationship. Plaintiff contends that it terminated its association with Mr. Priest on April 1, 2004; any involvement it had with Mr. Priest after this date was limited to the completion of a few clients' cases, including California Casualty and Crum & Foster. Student Decl. ¶ 5; Reply Grubman Decl. ¶ 3; Reply Student Decl. ¶ 5, Ex. B.

14. While Defendants' contend that Plaintiff had "extensive knowledge" of Defendants' use of its trade names long before initiation of this suit, they provide no clear evidence to support this contention. In May 2004, one of Plaintiff's employees wrote an email to a client identifying Mr. Priest as their "Seattle office." Priest Decl. ¶ 14, Ex. E. Mr. Priest collected payments on behalf of two of Plaintiff's clients as late as February 8, 2005 and May 16, 2006. Id. ¶ 11. Mr. Priest forwarded a portion of those payments to Plaintiff through checks bearing the name "JNA Seattle." Id. ¶ 10.[1] Mr. Priest communicated with Plaintiff by email using the email address, "jnaseattle.com" Id. ¶ 9.

---

[1] In addition to remittances on amounts collected, Mr. Priest also sent Plaintiff checks bearing the name "JNA Seattle" as reimbursement for long distance telephone bills. Priest Decl. ¶ 12. For reasons "known only to the phone company," Plaintiff was unable to cancel its telephone service contract for the Seattle office when Defendants assumed responsibility for all expenses. Reply Grubman Decl. ¶ 4.

Plaintiff's CEO and founder John Student testified that he was unaware of the fact that Mr. Priest's checks were drawn on an account bearing the "JNA Seattle" name; Plaintiff's bookeeper receives and processes between 50 and 100 checks per day. Reply Student Decl. ¶ 6.

ORDER – 4

15. Defendants' evidence is consistent with Mr. Priest having only limited authority to use the JNA name to service a few remaining accounts on behalf of Plaintiff.

16. According to Plaintiff, it did not discover Defendants' use of the trade names in its own independent operations until Plaintiff opened an office in Chicago. At that time, Plaintiff learned that Mr. Priest had taken the URL name "JNA Chicago." After heated discussions, Mr. Priest released the domain name to Plaintiff. Student Decl. ¶¶ 6-7.[2] Over a period beginning in mid-May 2006, Plaintiff became aware that Mr. Priest was extensively using its trade names in connection with his own commercial collection business.

17. In mid-2006, Mr. Student demanded that Mr. Priest cease using his company's name. Student Decl. ¶ 8.

18. Plaintiff filed suit on October 5, 2006, but Defendants were not served until December 27, 2006. Reply Naomi See Decl. ¶ 9. Plaintiff filed this motion for a preliminary injunction on February 8, 2007.

### III. CONCLUSIONS OF LAW

1. The court has jurisdiction over the federal claims in this matter pursuant to 15 U.S.C. § 1125 and 28 U.S.C. §§ 1331 and 1338(a). The court exercises its supplemental jurisdiction over the state law claims in this matter. 28 U.S.C. § 1367.

2. Plaintiff seeks a preliminary injunction to enjoin Defendants from continuing to operate under the names "Jonathan Neil & Associates," "JNA Seattle, Inc.," "JNA," or any name, which tends to be confused with Plaintiff's name. See Mtn. at 1-2.

---

[2] The record is silent as to the date of this discovery. During oral argument, counsel agreed that Plaintiff opened the Chicago office sometime in late 2005 or 2006.

ORDER – 5

3. In a trademark[3] case, a plaintiff is entitled to a preliminary injunction "when it demonstrates either (1) a combination of 'probable success on the merits' and 'the possibility of irreparable injury' or (2) the existence of 'serious questions going to the merits' and that 'the balance of hardships tips sharply in his favor.'" GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000) (quoting Sardi's Rest. Corp. v. Sardie, 755 F.2d 719, 723 (9th Cir. 1985)).

4. These standards "are not separate tests but the outer reaches of a single continuum." Int'l Jenson, Inc. v. Metrosound U.S.A., 4 F.3d 819, 822 (9th Cir. 1997) (citation omitted).

5. Given that preliminary injunctions are an "extraordinary and drastic remedy," courts refrain from granting them unless the moving party carries the burden of persuasion by a "clear showing." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (citation omitted).

**A.   Conclusions on Likelihood of Success on the Merits**

6. Plaintiff argues, inter alia, that it is likely to prove that Defendants violated the Lanham Act because the trade names they use, including "JNA Seattle," "JNA," and "Jonathan Neil & Associates," constitute misleading or false designations of origin.

7. The protection of an unregistered trademark derives from section 43(a) of the Lanham Act, which provides:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or

---

[3] According to evidence before the court, Plaintiff has not federally registered the trademarks "Jonathan Neil & Associates" or "JNA," however, "the same standard" applies to both registered and unregistered trademarks. See Brookfield Commc'ns, Inc. v. West Coast Entm't, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999).

ORDER – 6

misleading description of fact, or false or misleading representation of fact, which–

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

8. To establish a claim under section 43(a), Plaintiff must show: (1) the existence of a valid, protectable mark used in connection with the sale of goods or services; and (2) Defendants' use of a mark that is confusingly similar. See Brookfield Commc'ns, Inc. v. West Coast Entm't, 174 F.3d 1036, 1046 (9th Cir. 1999).

9. As to the first element, the court finds that Plaintiff is likely to succeed in showing that the marks "Jonathan Neil & Associates" and "JNA," while unregistered, are valid and protectable. Arbitrary marks, which serve to identify a particular source of a product, are "inherently distinctive" and are presumptively entitled to protection under the Lanham Act. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). "Jonathan Neil & Associates" and "JNA" appear to be arbitrary and hence are distinctive terms for a business engaged in commercial collection services. Defendants do not contest that Plaintiff began using these marks long before they did. Nor do Defendants challenge the distinctiveness or validity of the marks. On these facts, Plaintiff makes a "clear showing" that "Jonathan Neil & Associates" and "JNA" are protectable marks.

10. The next inquiry, likelihood of confusion, concerns whether "the similarity of the marks is likely to confuse customers about the source of

ORDER – 7

the products." GoTo.com, 202 F.3d at 1205 (citations omitted). At the preliminary injunction stage, likelihood of confusion is the central element of a trademark claim. Id. at n.5.

11. Eight factors guide the court's analysis of likelihood of confusion. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979). Applied to this case, they are: (1) similarity of the marks; (2) proximity of the goods; (3) marketing channels used; (4) strength of Plaintiff's mark; (5) Defendants' intent in selecting its mark; (6) evidence of actual confusion; (7) likelihood of expansion into other markets; and (8) degree of care likely to be exercised by purchasers. See id. at 348-49. The eight-factor test is a "pliant" one; no single factor is determinative. Brookfield, 174 F.3d at 1034, n.16.

12. The court finds that Plaintiff has demonstrated a likelihood of confusion.

13. Evidence produced by Plaintiff shows that Defendants use marks that are not only similar but nearly identical to Plaintiff's trade names – "Jonathan Neil & Associates" and "JNA." See e.g., Olins Decl., Exs. B, D-F; Naomi See Decl., Ex. L. Although Defendants periodically use the name "JNA Seattle," the effect of inserting "Seattle" is negligible. See SMC Promotions, Inc. v. SMC Promotions, 355 F. Supp.2d 1127, 1135-36 (C.D. Cal. 2005) (noting that defendant does not avoid confusion by appropriating an entire mark and simply adding additional matter to it). Likewise, variations in font make no appreciable difference where "JNA" and "Jonathan Neil & Associates" are the "shared common element" of both Plaintiff's and Defendants' marks. See E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1291 (9th Cir. 1992) ("The key elements

ORDER – 8

of the marks are their sight, sound, and meaning and these similarities in characteristics 'weigh more heavily than differences.'") (quoting Sleekcraft, 599 F.2d at 351).

14. As to proximity of the goods, the parties are direct competitors in the commercial collection business. See Brookfield, 174 F.3d at 1055-56 (noting that likelihood of confusion follows as a "matter of course" where virtually identical marks are used with identical products or services).[4]

15. Convergent marketing channels increase the likelihood of confusion. Both Plaintiff and Defendants rely on the same marketing channels including internet, phone directories, conferences or trade shows, and letters of solicitation to attract customers throughout the country, including Washington State.

16. The court relies heavily on these first three factors – i.e., that the marks are substantially identical, that the parties offer substantially identical services, and that they use the same marketing channels. "This trinity constitutes the most crucial body of the Sleekcraft analysis." GoTo.com, 202 F.3d at 1207.

17. The court briefly considers the remaining factors, which, while less determinative, also support Plaintiff's showing of likelihood of confusion.

18. The strength of Plaintiff's trade names, "Jonathan Neil & Associates" and "JNA" are evidenced by continuous use for two decades. See E. & J.

---

[4] During oral argument, Defendants' counsel opined that the element of competition is unclear because Mr. Priest is engaged "by and large" in subrogation claims; therefore his services are "not identical" to those of Plaintiff. The court is unpersuaded by this argument. There is no dispute that subrogation claims comprise a form of collection on behalf of insurance companies and that *both* parties offer both general and subrogation collection services.

ORDER – 9

Gallo, 967 F.2d at 1291 (affirming finding that plaintiff's trademark was strong, based on long continuous use).[5]

19. The court declines to inquire too closely into Defendants' intent to confuse customers. On the one hand, Mr. Priest may have initially adopted the marks in good faith; he likely had implied permission to do so during the course of the parties' business relationship. Notwithstanding, Mr. Priest fails to produce clear evidence to show that he is *currently* authorized to use the marks in connection with his own, *independent* commercial collection business.[6] As to his continued use of the marks, Mr. Priest cannot claim good faith ignorance.

20. Plaintiff produces evidence of actual confusion. Evidence of prior confusion is persuasive proof that future confusion is likely. Sleekcraft, 599 F.2d at 352 (citation omitted).

21. The degree of care exercised by purchasers sheds little light on this case.

22. Because the parties already compete with one another by providing similar services in a national market, the court declines to evaluate the issue of whether there is a likelihood of expansion. See Brookfield, 174

---

[5] Even so, "the strength of the mark is of diminished importance" in situations in which the appearance of the conflicting marks and the services provided are almost identical. Brookfield, 174 F.3d at 1059 (citation omitted).

[6] While Defendants baldly assert the affirmative defense of license, they offer little evidence to support the contention that they had or have license to use Plaintiff's trade names in connection with their own *independent* operations. See Opp'n at 10. Defendants' offer no evidence to corroborate Mr. Priest's testimony that he was explicitly authorized to establish JNA Seattle, Inc. to compete directly with Plaintiff. See Priest Decl. ¶ 5. The court finds that Defendants' argument of license lacks sufficient support to raise serious doubts concerning Plaintiff's likelihood of success at the preliminary injunction stage. Defendants' evidence of good faith in *initially* adopting the marks as a salesperson or to service Plaintiff's accounts may nevertheless carry some weight in assessing damages. See Sleekcraft, 599 F.2d at 354 ("Good faith is less probative of likelihood of confusion, yet may be given considerably more weight in fashioning a remedy.").

ORDER – 10

F.3d at 1060 ("The likelihood of expansion in product lines factor is relatively unimportant where two companies already compete to a significant extent.").

23. For these reasons, the court concludes that Plaintiff has demonstrated a likelihood of success on its claim that Defendants' use of the trade names, "Jonathan Neil & Associates" "JNA" and "JNA Seattle" constitute false or misleading designations of origin, in violation of section 43(a) of the Lanham Act.

**B.  Conclusions on Irreparable Harm**

24. Once a plaintiff establishes a likelihood of confusion under the Lanham Act, as here, a court may presume irreparable harm from prospective injury to a business's goodwill and reputation.  See Brookfield, 174 F.3d at 1066.

25. Defendants attempt to rebut this presumption by arguing that Plaintiff has unreasonably delayed in asserting its exclusive right to use its trade names.  Delay in seeking relief may undercut the possibility of irreparable harm: "[a] preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights, a plaintiff demonstrates the lack of need for speedy action . . . ." Lydo Enters., Inc. v. City of Las Vegas, 745 F.2d 1211, 1213 (9th Cir. 1984) (citation omitted).

26. As described above in the findings of fact, and below in the court's conclusions on Defendants' laches defense, evidence of Plaintiff's delay in asserting its rights is ambiguous at best.

ORDER – 11

27. Even assuming, as Defendants contend, that Plaintiff acted less than swiftly to enforce its rights, courts are "loath to withhold relief solely on that ground." Lydo, 745 F.2d at 1214. In Lydo for instance, the court's denial of a preliminary injunction was based not only on the plaintiff's *5 year* delay in seeking relief, *but also* because the singular threat of financial loss did not constitute irreparable harm. Id.

28. On the evidence before the court, Defendants fail to cast serious doubt on the presumption that Plaintiff will suffer irreparable injury to its reputation and goodwill arising from Defendants' continued use of their trademarks.

**C. Conclusions on Equitable Defenses**

29. Defendants raise two equitable defenses, laches and unclean hands.

30. In order to prevail on a laches defense, a party must show (1) that the claimant unreasonably delayed in filing suit; and (2) as a result of the delay, the party suffered prejudice. Danja LLC v. Sony Corp., 263 F.3d 942, 951 (9th Cir. 2001) (citation omitted).

31. In considering delay, courts first determine when the statute of limitations period expires for "the most closely analogous action under state law." Tilamook Country Smoker, Inc. v. Tillamook County Creamery, 465 F.3d 1102, 1108 (9th Cir. 2006). If a plaintiff files within that period, there is a strong presumption against laches. Id. In this case, the "most closely analogous action under state law" is Washington's common law tort of trade name infringement. Pursuant to RCW 4.16.080(2), torts are subject to a three year statute of limitations. Even assuming that Plaintiff's causes of action arose as early as February 2004, when Mr. Priest

ORDER – 12

incorporated under the name "JNA Seattle," the complaint, filed on October 6, 2006, falls within the statute of limitations. The court therefore begins with a presumption against laches.

32. The relevant delay in a laches defense is the period from when the plaintiff knew or should have known of the allegedly infringing conduct until the initiation of the lawsuit. Id. at 1108-09. Plaintiff's knowledge of Defendants' alleged infringement is subject to dispute. Defendants claim that Plaintiff has known of Defendants' use of its trade names since 2004. Defendants rely on the following evidence: the February 2004 incorporation of JNA Seattle, an employee's 2004 reference to Mr. Priest as Plaintiff's "Seattle office," Plaintiff's receipt of checks bearing the name "JNA Seattle," and Mr. Priest's use of a "jnaseattle.com" email address. Defs.' Opp'n at 14; Priest Decl. ¶¶ 5-6, 10-16.

33. Plaintiff counters that it was unaware of JNA Seattle's incorporation. Reply Student Decl. ¶ 4; Reply Grubman Decl. ¶ 2. According to Plaintiff, its association with Mr. Priest after April 1, 2004, was limited to completion of a few clients' cases; Mr. Priest was given limited authority to service those claims. Reply Grubman Decl. ¶ 3; Reply Student Decl. ¶ 5. Plaintiff's CEO, Mr. Student, was unaware of the fact that Mr. Priest's checks were drawn on an account bearing the name "JNA Seattle." Reply Student Decl. ¶ 6. Finally, Plaintiff contends that it only discovered Defendants' use of its trade names in its own independent operations when it learned that Mr. Priest had taken the URL name "JNA Chicago." Student Decl. ¶ 6.

ORDER – 13

34. At this stage, the court finds it unnecessary to wade too deeply into the parties' dispute concerning knowledge. It is enough to conclude that the sum of the evidence produces a murky picture of Plaintiff's knowledge of Defendants' conduct. As to any delay between the time that Plaintiff discovered the Chicago URL name in 2005 or 2006 and the filing of this suit, the court concludes that Plaintiff's conduct was reasonable. That Mr. Priest capitulated and surrendered the URL "JNA Chicago" suggests that Plaintiff may have reasonably expected Mr. Priest to forego his use of the marks without resort to legal action. Absent more probative evidence of unreasonable delay, the court concludes that Defendants fail to rebut the presumption against laches.

35. In addition, Defendants fail to offer any evidence to show that they have suffered prejudice as a result of Plaintiff's supposed delay. "[L]aches is not the mere passage of time, but requires instead detrimental reliance." Carter-Wallace, Inc. v. The Proctor & Gamble Co., 434 F.2d 794, 803 n.4 (9th Cir. 1970) (citations omitted).

36. As to unclean hands, the court again disagrees with Defendants. To prevail on an unclean hands defense, the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims. "[E]quity requires that those seeking its protection shall have acted fairly and without fraud or deceit as to the controversy in issue." Ellen v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir. 1985) (citation omitted). The unclean hands maxim allows broad discretion regarding equitable remedies; the court is "not bound by formula or restrained by any limitation that tends to trammel the free and

ORDER – 14

just exercise of discretion." Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245-6 (1933).

37. The court finds inadequate evidence in the record to conclude that Plaintiff engaged in fraud, deceit, or material misstatement in relation to its trademarks that warrants a finding of unclean hands.

38. Moreover, the court observes that Defendants' hands are not as clean as snow. This is not a case in which a defendant innocently adopted a trade name in complete ignorance of another's proprietary interest. Even if, at some point in time, Defendants believed that they were entitled to use the names at issue, it is uncontroverted that Plaintiff no longer authorizes such use. Student Decl. ¶ 8. Defendants apparently refuse to cease using the names.

39. In conclusion, Defendants' assertions of equitable defenses fall short of barring injunctive relief.

40. Because Plaintiff has prevailed in showing probable success on the merits and the possibility of irreparable harm on its Lanham Act claim, the court need not consider the alternative avenue for obtaining injunctive relief. The court likewise finds it unnecessary to evaluate the merits of Plaintiff's other federal and state law claims.

## IV. PRELIMINARY INJUNCTION

Defendants, and their representatives and employees, and any business entity under their control, including, but not limited to, JNA Seattle, Inc., are enjoined from:

1. Operating under the names "Jonathan Neil & Associates," "JNA Seattle, Inc.," and "JNA," or any other marks and/or trade names containing the

ORDER – 15

terms "Jonathan" or "Neil" or the initials "JNA" alone or in combination with any other term, in connection with the commercial collection or subrogation business; and

2. Making any statement that is calculated or likely to cause a third party to believe that Defendants are associated with Plaintiff's business.

Defendants shall have 45 days to bring their business activities into compliance with this order.

Lastly, the court concludes that Plaintiff shall deposit a $15,000 bond with the clerk of this court, conditioned to pay Defendants' reasonable costs and damages should it be found that this action has been wrongfully brought. See Fed. R. Civ. P. 65(c). This order shall not take effect until Plaintiff deposits such bond with the court.

Dated this 14th day of March, 2007.

JAMES L. ROBART
United States District Judge

ORDER – 16